William GAGNON and The Star-Journal Publishing Corporation, Petitioners,

v.

The DISTRICT COURT In and For the COUNTY OF FREMONT, State of Colorado and The Honorable John Anderson, One of the Judges Thereof, Respondents.

No. 81SA71.

Supreme Court of Colorado.

July 6, 1981.

Rehearing Denied Aug. 24, 1981.

---

Petersen & Fonda, P. C., William F. Mattoon, David W. Crockenberg, Pueblo, for petitioners.

John Anderson, pro se.

Fishman & Geman, P. C., Donald T. Trinen, Stephanie M. Smith, Denver, for respondents.

Cooper & Kelley, P. C., Thomas B. Kelley, Denver, for amicus curiae, The Colorado Press Ass'n.

HODGES, Chief Justice.

In this original proceeding we issued a rule to show cause why an order of the respondent district court compelling the disclosure of a newspaper reporter's confidential source and the production of documents from that source should not be reversed. From our review of the record we conclude that the order was not an abuse of discretion. We therefore discharge the rule.

On August 5, 1980, a news article appeared in the *Pueblo Chieftain* newspaper concerning the operation of the First National Bank of Florence. Included in the article were the following paragraphs:

> "Among the many concerns of the Comptroller with the bank's operation was the cost of accounting and management services provided by Fred T. Crussell, a Canon City certified public accountant.

> \* \* \* \* \* \*

> "Crussell recently told *The Chieftain* that billing to the bank for these services was somewhere between $30,000 and $40,000, but a negotiated settlement for $16,000 was reached after some bank board members charged that the fees were exorbitant."

On August 8, 1980, Crussell, who is the plaintiff in the action pending below, brought suit against the Star-Journal Publishing Corporation (Star-Journal), publisher of the *Pueblo Chieftain*, alleging that the above quoted paragraphs were false, defamatory, and highly damaging to plaintiff's personal and professional reputation.

In the normal course of discovery conducted in connection with his defamation action, plaintiff deposed William Gagnon, the reporter whose byline appeared on the article, concerning his sources of information for the article. In response to a request for "all the documents...relating to the matter raised in and by the [plaintiff's] complaint," Gagnon refused to disclose the name of one source or to produce any documents given to him by that source. The plaintiff then filed a motion to compel disclosure, and Star-Journal thereupon filed a counter-motion for protective orders. At a hearing on these motions, Star-Journal submitted to the trial judge for his review a sealed envelope containing the documents given to Gagnon by the confidential source.

As the close of this hearing on February 5, 1981, the trial judge granted the plaintiff's motion to compel. In making his ruling, the trial judge stated that:

> "[C]onsidering all the public policy reasons that might attach to granting confidentiality..., I find that the need for due process in this lawsuit overcomes the need for confidentiality."

It is not clear from the record whether the trial judge had reviewed the documents in the sealed envelope at the time he made this ruling. However, the trial judge issued a written order on February 20, 1981 *nunc pro tunc* February 5, 1981 which embodied and further explained his oral ruling. This written order states that from a review of the documentary evidence the trial judge found the material to be clearly relevant. From this it is quite obvious that the trial judge reviewed the documents in the sealed envelope before he issued the written order.[1]

The *nunc pro tunc* order of the trial judge contained the following findings:

---

1. We issued a rule to show cause in this case based upon the petitioners' assertion in the petition that the respondent judge "did not avail himself of the opportunity to examine" the contents of the documents in the sealed

envelope prior to his ruling. As stated above, however, it is clear from the record that the trial judge did review that material before entering the *nunc pro tunc* order.

"From a review of the pleadings, and the documentary evidence presented, the Court finds the material is clearly relevant or would result in the exposition of other facts and circumstances that would lead to clearly relevant information. The Court finds that no alternate source is shown, and the Court should not speculate on that point. There is no Constitutional privilege involved and there is no 'press shield' law in Colorado. [Citation omitted.] . . . Mr. Gagnon's article itself is what is in question and irrefutably his source or informant had much to offer him. The evidence can hardly be 'remotely relevant.' "

A motion to compel discovery is committed to the discretion of the trial court and will be upheld on appeal absent a clear abuse of discretion. *Zerilli v. Smith*, 656 F.2d 705 (D.C.Cir. 1981); *Baker v. F & F Investment*, 470 F.2d 778 (2d Cir. 1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Mayer v. District Court*, 198 Colo. 199, 597 P.2d 577 (1979). Based on the record before us, we cannot say that the trial judge abused his discretion in refusing to recognize a reporter's privilege[2] and ordering disclosure of the identity of the confidential source and production of documents provided by that source.

C.R.C.P. 26(b)(1), dealing with discovery in civil actions, provides:

"Parties may obtain discovery regarding any matter, not privileged, *which is relevant* to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.)

Here, where the trial court found in effect that the identity of the confidential source and production of materials provided by that source are relevant to the subject matter, the plaintiff's motion was properly granted. Accordingly, we discharge the rule.

ROVIRA and LOHR, JJ., specially concur.

DUBOFSKY, J., does not participate.

ROVIRA, Justice, specially concurring.

I concur with the result reached by the majority for the reason that the trial judge recognized the First Amendment issues inherent in the proceeding and was sensitive to the need for a balancing of the rights of the plaintiff and of the Star-Journal.

In addition to the findings set out in the majority opinion, the trial judge also stated:

"The Court, in employing a balancing test determines that the need to have the information from Mr. Gagnon in this case far outweighs any societal interest in extending privilege. Due process of law would surely suffer in a defamation suit against a newspaper, when the reporter's source, upon whom, as here, the reporter relies in significant degree, becomes privileged upon the decision of the reporter himself."

In my view, the majority opinion, which only applies the test of relevancy to discovery in a media libel case, does not sufficiently take into consideration and protect First Amendment values. *See Pankratz v. District Court*, Colo., 609 P.2d 1101 (1980) (Rovira, J., concurring).

I am authorized to say that LOHR, J, joins in this special concurrence.

2. Although the United States Supreme Court in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) held that news gathering must be afforded some protection under the First Amendment, it refused to create a reporter's privilege stating:

"We are admonished that refusal to provide a First Amendment reporter's privilege will undermine the freedom of the press to collect and disseminate news. But this is not the lesson history teaches us. . . . [T]he common law recognized no such privilege, and the constitutional argument was not even asserted until 1958. From the beginning of our country the press has operated without constitutional protection for press informants, and the press has flourished. The existing constitutional rules have not been a serious obstacle to either the development or retention of confidential news sources by the press."